Paul D. Stevens (Cal. Bar. No. 207107)
pstevens@stevenslc.com
Lauren A. Bochurberg (Cal. Bar. No. 333629)
lbochurberg@stevenslc.com
**STEVENS, LC**
1855 Industrial Street, Suite 518
Los Angeles, California 90021
Tel: (213) 270-1211

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JOEL HAWES, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MEAD JOHNSON & COMPANY, LLC., RECKITT BENCKISER, LLC. and DOES 1 through 10, inclusive,

Defendants.

**CLASS ACTION COMPLAINT**
DEMAND FOR JURY TRIAL

1. UNLAWFUL, UNFAIR, AND FRAUDULENT BUSINESS ACTS OR PRACTICES) IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200, *et seq*.
2. FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500, *et seq*.
3. VIOLATION OF CALIFORNIA CIVIL CODE § 1750, *et seq*. (Consumers Legal Remedies Act)

DEMAND FOR JURY TRIAL

Plaintiff Joel Hawes (hereinafter "Plaintiff"), individually and on behalf of himself and others similarly situated (hereinafter "the Class" or "Class Members"), alleges the following:

## I. JURISDICTION

1. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more proposed Class Members; (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs; and (iii) there is minimal diversity because Plaintiff and Defendants are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

2. This Court has personal jurisdiction over Defendants because Defendants have intentionally availed themselves of the laws of the United States and the state of California, having purposefully marketed, advertised and/or sold the Product Line (defined below) to consumers across the United States, including the state of California. Such conduct has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, including in the state of California.

## II. VENUE

3. In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, Defendants transact business in this District, and Defendants have intentionally availed themselves of the laws and markets within this District.

## III. NATURE OF THE ACTION AND STATEMENT OF FACTS

This is an important consumer protection matter that concerns two issues: i) the omission and non-disclosure of information that is a material concern for consumers—the existence of, and potential health risks from, organic fluorine in

infant formula produced, marketed and sold by Mead Johnson & Company, LLC. and Reckitt Benckiser, LLC. (collectively referred to as "Defendants") under the brand name "Enfamil" and specifically, the Enfamil Infant Formula Product Line as defined herein; and ii) Defendants' false and misleading marketing of the Enfamil Infant Formula Product Line and brand as a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact.

4. Defendants manufacture, distribute, and market a variety of infant and toddler formulas.

5. The products at issue are Defendants' Enfamil Infant Formula Product Line and includes the following products:

i. Enfamil NeuroPro Infant Formula ("Enfamil NeuroPro")

ii. Enfamil Simply ProSobee Plant-Based Infant Formula ("Enfamil Simply Plant Based")

iii. Enfamil Infant Formula Milk-based Powder with Iron ("Enfamil Infant Formula Milk-based")

(hereinafter individually referred to as "product", plurally referred to as "products" and collectively referred to as "the Product Line")

6. The products in Defendants' Enfamil Infant Formula Product Line that were manufactured, marketed, advertised and sold by Defendants over the proposed Class Period and are currently being manufactured, marketed, advertised and sold by Defendants, and the products in Defendants' Enfamil Infant Formula Product Line purchased by Plaintiff and tested by Plaintiff as set forth herein, were and are substantially similar. All of the products in Defendants' Enfamil Infant Formula Product Line have the same composition of materials, all were manufactured in the same place and manner and all contain fully fluorinated carbon atoms and organic fluorine.

7. Defendants offer the products in the Product Line for sale through various channels, including directly on Defendants' website and through third-party retail outlets and internet websites such as Target, Sam's Club, Walmart and Amazon.

8. Through an extensive, widespread, comprehensive, and uniform nationwide marketing campaign, including creating marketing materials pertaining to the products in the Product Line for third-party sellers, Defendants promoted themselves as a conscientious company that is committed to the most stringent manufacturing, packaging, and quality assurance procedures.

9. During the Class Period defined herein, which dates from 2020 to present, Defendants promoted, and continue to promote, the Enfamil Product Line and brand as a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact through the following marketing representations and statements on the Enfamil brand website. The website images and statements are identified below:

i.

Supporting the brain in everything we do.

There are lots of formulas. Where do you start? Enfamil NeuroPro™ Infant or Enfamil® Enspire™ are excellent for routine, everyday feeding. Our formulas are backed by decades of research, so whether you're starting your baby on formula, switching, or supplementing, you can count on Enfamil. Complete nutrition ages 0-12 months.

- Our formulas are backed by decades of research, so whether you're starting your baby formula, switching, or supplementing, you can count on Enfamil.
- https://www.enfamil.com/why-enfamil/enfamil-formula-family/

ii.




- The **health and safety of infants and children is our top priority**, and for that reason we are committed to providing a **high quality** and **safe products** for our littlest consumers.
- Parents can be assured that our infant formulas are **safe** and **nutritious feeding options** for their infants when prepared, stored, and handled according to package instructions.
- https://www.enfamil.com/why-enfamil/quality-assurance/

iii.

Enfamil® Quality Assurance

Our infant products undergo extensive quality and safety checks throughout the manufacturing process—from raw materials to finished product. A representative number of samples from every batch we produce are tested to ensure the product meets our stringent quality standards. Each batch of our products is assured to meet our high quality and safety standards as verified by our proprietary Quality Systems that exist in every manufacturing facility. We distribute our products only if they pass our strict testing. We track the path of every ingredient in our infant and toddler products from its initial supplier through all processing stages until it reaches our consumer. In addition, every product has a unique batch code that our consumers can easily identify and read. Should the need arise, our highly trained employees can use the unique batch codes to confirm the safety of our products.

- Our infant products undergo **extensive quality** and **safety checks** throughout the manufacturing process—from raw materials to finished products.
- Each batch of our products is assured to meet our **high quality and safety standards** as verified by our proprietary Quality Systems that exist in every manufacturing facility.
- https://www.enfamil.com/why-enfamil/quality-assurance/

10. Through Defendants' marketing and advertising campaign, Defendants were able to sell products from the Product Line to thousands of consumers throughout California and the rest of the United States. The products in the Product Line are sold individually for prices ranging from $18.99 for product "sticks" to $224.99 for a refill box case of four (4).

11. Plaintiff read, believed, and relied upon Defendants' marketing and advertising set forth herein and the marketing language identified and listed below the screenshots of Defendants' website pages included herein when purchasing the products from the Product Line. Plaintiff reasonably understood the marketing and labeling of the products in the Product Line to mean that the products were a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact.

12. Currently, there is significant public health concern about the materials and chemicals used in infants' and children's products. In particular, infant formulas and baby food manufacturing practices, may expose children to harmful chemicals and contaminants.[1]

13. Thus, there is a continuous incentive for a company such as Defendants' to market their Product Line and brand as a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact.

---

[1] https://abcnews.go.com/US/fda-sends-warning-letter-3-major-formula-makers/story?id=102821276

14. The products in the Product Line at issue contain, among other things, "Perfluoroalkyl and polyfluoroalkyl substances" or "PFAS", as determined by the existence of organic fluorine in the products.

15. According to the U.S. Centers for Disease Control and Prevention (CDC), PFAS are a group of over 9,000 synthetic chemicals that have been used in industry and consumer products, worldwide, for over 70 years.[2]

16. The California legislature has found and declared the following: "PFAS," are highly toxic and highly persistent in the environment. See Cal Health & Safety Code § 108981(a).

17. The California legislature has found and declared the following: PFAS are referred to as "forever chemicals" because they are extremely resistant to degradation in the natural environment, including the water, the soil, the air, and our bodies, because of their carbon-fluorine bond, one of the strongest bonds known in nature. See Cal Health & Safety Code § 108981(b).

18. The California legislature has found and declared the following: PFAS have been linked by scientific, peer- reviewed research to severe health problems, including breast and other cancers, hormone disruption, kidney and liver damage, thyroid disease, developmental harm, and immune system disruption, including interference with vaccines. See Cal Health & Safety Code § 108981(c).

19. The CDC outlines several health effects associated with PFAS exposure, including cancer, liver damage, decreased fertility, increased risk of asthma and thyroid disease.[3] Other studies have associated exposure to PFAS with

---

[2] https://www.cdc.gov/niosh/topics/pfas/default.html

[3] https://www.atsdr.cdc.gov/pfas/health-effects/index.html ; see also https://www.hsph.harvard.edu/news/hsph-in-the-news/pfas-health-risks-underestimated/#:~:text=A%20recent%20review%20from%20the,of%20asthma%20and%20thyroid%20disease

increased pregnancy losses, disruption in sex hormone homeo-statis and sexual maturation.[4]

20. Because of the widespread use of PFAS, they can be found in water, air, animals, and soil at locations across the nation and the globe. Due to this widespread use, the CDC's National Health and Nutrition Examination Survey (NHANES) found PFAS in the blood of 97 percent of Americans, suggesting virtually ubiquitous exposure of Californians to these highly toxic chemicals. Widespread use has also resulted in broad PFAS dispersal in indoor and outdoor environments, including the PFAS contamination of the drinking water of approximately 16 million Californians, particularly in disadvantaged communities, of breast milk, and of indoor and outdoor air. See Cal Health & Safety Code § 108981(e).

21. Because PFAS chemicals are "forever chemicals" and accumulate in the human body, there is no safe manner or level of exposure to humans.

22. Under the California Health & Safety Code, "Perfluoroalkyl and polyfluoroalkyl substances" or "PFAS" means a class of fluorinated organic chemicals containing at least one fully fluorinated carbon atom. See Cal Health & Safety Code § 108945(e).

23. Under the California Health & Safety Code, the presence of PFAS in a product is determined by and measured in total organic fluorine. See, for example, Cal. Health & Safety Code §§ 108945(b)(2)); 108970(e) and § 108982(b).

24. Leading science has also directed that identification of organic fluorine in industry and consumer products has also recently emerged as an indicator that encompasses the total content of both known and unknown types of PFAS, unlike

[4] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2679623/

traditional targeted analyses that can reliably quantify only a few dozen known PFAS that have commercially available analytical standards."[5]

25. Plaintiff commissioned independent third-party testing to determine whether products in the Product Line and the products purchased by Plaintiff in the Product Line contain organic fluorine. The products purchased by Plaintiff have the same composition of materials as the Products that were, and are, currently being manufactured and sold by Defendants during the proposed Class Period and the Products tested by Plaintiff.

26. The independent testing by Plaintiff was performed by an independent analytical contract laboratory founded in 1950. The laboratory is compliant with the Code of Federal Regulations (CFR) parts 210 and 211 for analytical subcontract laboratories, as well as GLP/cGMP compliant, FDA registered, and maintains a current ISO 17025 accreditation. The laboratory is also listed on the Consumer Product Safety Commission's website as an accredited analytical testing laboratory.

27. The testing conducted by the laboratory was conducted in accordance with accepted industry standards for detecting the presence of organic fluorine.

28. The testing was performed at the independent analytical contract laboratory's facilities.

29. Plaintiff conducted two rounds of testing. The first round was conducted on the same product as the product Plaintiff purchased and near in time to Plaintiff's purchase. Specifically, Plaintiff was a frequent shopper of the products from the Product Line and purchased the Enfamil NeuroPro Infant Formula from Amazon.com in February 2024. The product tested, the tested

---

[5] Anna S. Young, Heidi M. Pickard, Elsie M. Sunderland, and Joseph G. Allen; "Organic Fluorine as an Indicator of Per- and Polyfluoroalkyl Substances in Dust from Buildings with Healthier versus Conventional Materials" *Environmental Science & Technology*. November 4, 2022.

product purchase date, the source of the tested product, the part tested, the test date and the test result are set forth below:

- **Product Tested**: Enfamil NeuroPro
  **Tested Product Purchase Date**: unknown
  **Source of Tested Product**: random sample purchase from a Target retail store located in Los Angeles, CA.
  **Test Report Date**: January 5, 2024
  **Amount Tested:** 205.63 mg
  **Part Test & Result**: Content 22 PPM Organic Fluorine
  **Total Amount of Content of Product:** 587g

30. The test results above found at least one fully fluorinated carbon atom and organic fluorine present in the product tested from the Product Line, which was the same product as those purchased by Plaintiff.

31. The second round of testing commissioned by Plaintiff was performed on two more samples of two (2) other products in the Product Line. The second round of testing conducted tests on the lining and contents of each of the products tested for a total of two (2) tests. The products tested, the tested products' purchase dates, the source of the tested products, the parts tested, the test dates and test results are set forth below:

- **Product Tested:** Enfamil Simply Plant Based
  **Tested Product Purchase Date**: February 27, 2024.
  **Source of Tested Product:** random sample purchase from a Walmart location located in Los Angeles, CA.
  **Test Report Date:** March 11, 2024
  **Part Test & Result:** Lining 28.7 PPM Organic Fluorine
  **Part Test & Result:** Content 26.2 PPM Organic Fluorine
  **Amount Tested:** Content 216.79 mg
  **Total Amount of Content of Product:** 593 g

- **Product Tested:** Enfamil Infant Formula Milk-based
  **Tested Product Purchase Date**: February 27, 2024.
  **Source of Tested Product:** random sample purchase from a Walmart location located in Los Angeles CA.
  **Test Report Date:** March 11, 2024
  **Part Test & Result:** Lining 26.1 PPM Organic Fluorine
  **Part Test & Result:** Content 25.8 PPM Organic Fluorine
  **Amount Tested:** Content 218.78 mg
  **Total Amount of Content of Product:** 354 g

32. The test results found at least one fully fluorinated carbon atom and organic fluorine present in all of the products tested from the Product Line, including the same products as those purchased by Plaintiff.

33. The test results indicated dangerous levels of organic fluorine. To put the test results into perspective, the California legislature recently enacted law that will limit the total amount of intentionally added organic fluorine in cosmetic products to zero (see Cal. Health & Safety Code §§ 108981.5 and 108982). The EPA has found there is no safe level of PFAs in drinking water.[6] Because PFAS chemicals are "forever chemicals" and accumulate in the human body, there is in fact no safe manner or level of exposure to humans. The Enfamil products are particularly concerning given the fact that an infant is being exposed to the products' contents through repeated ingestion several times a day.

34. The existence of organic fluorine in products in the Product Line thus implicates health and safety concerns that a reasonable consumer would find material.

---

[6] ttps://www.usatoday.com/story/news/2022/06/15/epa-no-safe-level-toxic-pfas-thousands-water-systems/7632524001/?gnt-cfr=1

35. The products in the Product Line that were and are currently being manufactured, marketed, advertised and sold by Defendants during the proposed Class Period and those purchased by Plaintiff and those tested by Plaintiff each have the same respective composition of materials and were manufactured in the same manner. Therefore, organic fluorine was present in all products in the Product Line and the products from the Product Line purchased and used by Plaintiff. Therefore, the products in the Product Line, as a product line, contain organic fluorine. In addition, organic fluorine continues to be present in all products in the Product Line currently being manufactured, marketed, advertised and sold by Defendants.

36. The Product Line's marketing and advertising, including the website pages, product labels and packaging, were and are uniform and pervasive over the proposed Class Period.

37. The marketing of the products in the Product Line, including the products in the Product Line’s website pages, product labels and packaging as set forth herein, and in the photographs below, omit and do not provide any disclosure of the existence of, and potential health risks from, organic fluorine or PFAS in the products:

**Enfamil NeuroPro:**

**Front/ Back Packaging**






**<u>Side Packaging</u>**







**<u>Enfamil Simply Plant Based:</u>**

**<u>Front/Back Packaging</u>**






**Side Packaging**







**Enfamil Infant Formula:**

**Front/Back Packaging**






**Side Packaging**




38. The marketing and labeling of the products in the Product Line, as set forth herein, including the products in the Product Line's website pages, packaging and labels, should and could have revealed and disclosed the existence of, and potential health risks from, organic fluorine and PFAS in the products in the Product Line and could and should have provided a disclosure that states, at a minimum, "Caution: This product contains organic fluorine which is a known indicator of per and polyfluoroalkyl substance ("PFAS"). Exposure to PFAS may cause serious health effects."

39. Plaintiff and other consumers do not understand what organic fluorine and PFAS are or their potential health risks.

40. Plaintiff and other consumers were not and are not provided adequate information or warning of the existence of, and health risks from, organic fluorine and PFAS in the products in the Product Line from the products in the Products' information provided by Defendants.

41. The existence of organic fluorine in the products in the Product Line directly contradicts Defendants' representations that the Enfamil brand sells products, including those in the Product Line, that are a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact.

42. Prior to purchase, Plaintiff and consumers lack the expertise to ascertain the existence of the true materials, chemicals and/or ingredients in the products in the Product Line, including but not limited to organic fluorine and PFAS and their risks to human health.

43. Defendants have exclusive knowledge of the materials, ingredients and chemicals in the products in the Product Line as Defendants are the manufacturers, distributors, and marketers of a variety of infant and toddler formulas.

44. Plaintiff and reasonable consumers must, and do, rely on Defendants to disclose the materials, chemicals, and ingredients in the products in the Product Line and advise of the risks that may potentially affect the health and/or safety of consumers.

45. Plaintiff read, believed, and relied upon Defendants' marketing and advertising set forth herein when purchasing the products from the Product Line. Plaintiff reasonably understood the marketing and labeling of the products in the Product Line to mean that the products were a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact. In reliance on Defendants' labeling, marketing claims and omissions set forth herein, Plaintiff and consumers purchased products they would not have purchased but for Defendants' false promotion of the products in the Product Line as a safe feeding option for infants that prioritizes the health and safety of infants and children,

undergoes extensive quality and safety checks, and is committed to reducing its environmental impact, and their omission of information regarding the presence of organic fluorine and PFAS in the products in the Product Line. Had Plaintiff and other consumers known the true nature of the products in the Product Line and had information regarding the presence of organic fluorine and PFAS in the products in the Product Line not been omitted from marketing and labeling materials, they would not have purchased products from the Product Line or would not have paid as much for them.

46. Although Defendants are in the best position to know what content it placed in its marketing and what chemicals and ingredients are in the products in the Product Line, Plaintiff nonetheless satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

a. **WHO**: Defendants made material misrepresentations of fact about the products in the Product Line to the public through its website representations and marketing statements that the products in the Product Line are a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact and omitted the material facts that the products in the Product Line and the products purchased by Plaintiff contain organic fluorine indicative of PFAS that are widely known to have significant negative health repercussions. These representations and omissions constitute material misrepresentations and omissions regarding harmful chemicals in the products in the Product Line.

b. **WHAT**: Defendants knew, or should have known, to test for organic fluorine and PFAS, especially considering they claim that their infant products undergo extensive quality and safety checks throughout the manufacturing process. Defendants' conduct here was, and continues to be,

fraudulent because it misrepresented that the products in the Product Line and the products purchased by Plaintiff are a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact despite the fact that the products in the Product Line contain organic fluorine indicative of PFAS that have significant health risks. Further, Defendants omitted any disclosures warning consumers that the products in the Product Line contain organic fluorine indicative of PFAS that have significant health risks. Thus, Defendants' conduct deceived Plaintiff and Class Members into believing that the products in the Product Line are a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact. Defendants knew or should have known that their misrepresentations and omissions of information are material to reasonable consumers, including Plaintiff and Class Members, in making their purchasing decisions, yet Defendants continued to pervasively market the products in the Product Line in this manner.

c. **WHEN:** Defendants made the material misrepresentations and omissions set forth herein during the putative Class Period, including prior to and at the time Plaintiff purchased the products from the Product Line in February 2023, and continue to do so, despite Defendants' knowledge that the products in the Product Line contained and continue to contain harmful substances.

d. **WHERE:** Defendants' marketing messages and omissions were uniform and pervasive, carried through material misrepresentations and omissions on Defendants' website representations, marketing statements and the products in the Product Line's labels.

e. **HOW:** Defendants made material misrepresentations of fact about the products in the Product Line through their website representations and marketing statements that the products in the Product Line and the products purchased by Plaintiff were and are a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact and Defendants omitted material facts that the products in the Product Line contain organic fluorine indicative of PFAS that have significant health risks.

f. **WHY:** Defendants made the material misrepresentations and omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase products from the Product Line that they would not have otherwise purchased but for the omission of the existence of organic fluorine in the products and their potential negative health effects and/or to pay a higher price than they otherwise would have for the products, the effect of which was that Defendants profited by selling more of the products from the Product Line to more consumers than they otherwise would have.

g. **INJURY:** Plaintiff and Class Members purchased, paid a premium, or otherwise paid more for the products from the Product Line when they otherwise would not have absent Defendants' misrepresentations and omissions of material facts.

47. As such, Defendants have engaged in conduct which violates the California Consumers Legal Remedies Act ("CLRA"), particularly California Civil Code §§ 1770(a)(5), Business & Professions Code § 17200, et seq., Business & Professions Code § 17500, et seq. and Civil Code § 1750, et seq.

48. Defendants were served by Plaintiff with written notices pursuant to Civil Code § 1750, et seq., (Defendant RECKITT BENCKISER, LLC on February 17, 2024, Defendant MEAD JOHNSON & COMPANY, LLC on February 20, 2024) which set forth Plaintiff's contentions and requested remedy. Plaintiff's letter was sent via certified mail with electronic return receipt to Defendants who acknowledged receipt. Defendants did not respond to Plaintiff's attempt to address the concerns stated herein and instead have allowed the products in the Product Line to continue to be sold with full knowledge of the alleged claims.

49. Wherefore, Plaintiff, the Class Members and other California consumers have, among other things, no adequate remedy at law for the injuries that are currently being suffered and that will be suffered in the future in that, unless and until enjoined by order of this court, the non-disclosure of material information that implicates health and safety concerns that a reasonable consumer would find material will continue and cause great and irreparable injury to Plaintiff, the Class Members and other California consumers.

50. Therefore, Plaintiff brings this action challenging Defendants' claims relating to the products in the Product Line on behalf of himself and all others similarly situated under California's Consumers Legal Remedies Act, particularly California Civil Code §§ 1770(a)(5) and 1770(a)(7), Business & Professions Code § 17200, et seq., Business & Professions Code § 17500, et seq. and California Civil Code § 1750, et seq.

51. Wherefore, Plaintiff seeks in equity an order compelling Defendants to discontinue the conduct alleged herein as set forth in greater detail herein.

52. Plaintiff further seeks an order compelling Defendants to restore the monetary amounts by which Plaintiff and the Class did not receive the value of the Product(s) they paid for and which Defendants have been unjustly enriched.

53. Plaintiff further seeks actual and punitive damages, pre- and post-judgment interest, attorneys' fees, and costs.

## IV. THE PARTIES

### A. Defendants

54. Defendant Mead Johnson & Company, LLC. is a Delaware corporation existing under the laws of the State of Delaware.

55. Defendant Reckitt Benckiser, LLC. is a Delaware corporation existing under the laws of the State of Delaware.

56. Defendant Mead Johnson & Company, LLC. and Defendant Reckitt Benckiser, LLC. now and at all times herein mentioned were engaged in business under the fictitious name "Enfamil" ("Defendants").

57. Defendants are the owners and distributors of the products in the Product Line and are the company that created and/or authorized the omissions and false, misleading, and deceptive advertisements and packaging for the products in the Product Line alleged herein.

58. Plaintiff is further informed and believes and based thereon alleges that DOES 1 through 10 were and/or are, in some manner or way, responsible for and liable to Plaintiff for the events, happenings, and damages hereinafter set forth below. The true names and capacities, whether individual, corporate, associate or otherwise of certain manufacturers, distributors, and/or their alter egos sued herein as DOES 1 through 10 inclusive are presently unknown to Plaintiff who therefore sue these Defendants by fictitious names. Plaintiff will seek leave of this Court to amend the Complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and based thereon alleges that DOES 1 through 10 were authorized to do and did business in Los Angeles, California.

///

**B. Plaintiff**

59. Plaintiff Joel Hawes ("Plaintiff") is an individual residing in Contra Costa County, California.

60. Plaintiff purchased products from the Product Line that contained and continue to contain organic fluorine. Plaintiff was a frequent shopper of the products from the Product Line and purchased the Enfamil NeuroPro Infant Formula Powder Refill Box (pack of four) on, among other times, February 14, 2023 from Amazon.com and paid $191.96. The products from the Product Line purchased by Plaintiff each have the same respective composition of materials as the products from the Product Line Plaintiff had independently tested and as set forth above, the independent testing of products from the Product Line conducted by Plaintiff included the same products as those Plaintiff purchased and near in time to Plaintiff's purchases. Therefore, the products Plaintiff purchased from the Product Line contained organic fluorine.

61. Plaintiff and his infant child used the products purchased from the Product Line on a daily basis multiple times throughout the day and were therefore exposed to organic fluorine at a heightened level.

62. Prior to and at the time of each purchase, Plaintiff considered Defendants' marketing and omissions related to the products in the Product Line, including those set out herein, including that the products in the Product Line are a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact. Plaintiff reasonably relied on these representations in deciding to purchase the products from the Product Line, and he would not have purchased the products from the Product Line, or would not have purchased them on the same terms, if the true facts had been known. As a direct

result of Defendants' material misrepresentations and omissions, Plaintiff suffered and continues to suffer, economic injuries.

63. Plaintiff would like to purchase products from the Product Line in the future. Plaintiff understands that the composition of the products in the Product Line could change to remove all organic fluorine and PFAS over time. However, Plaintiff is unable to determine the composition of the products in the Product Line before purchasing them again and whether the products are free of suspected harmful chemicals, or if they continue to contain organic fluorine and PFAS. Plaintiff might purchase products from the Product Line in the future, despite the fact they were once marred by false marketing and omissions of the existence of harmful chemicals in the Product Line, as he may reasonably assume, incorrectly, that the composition of the products in the Product Line was changed to remove all organic fluorine and PFAS. As long as Defendants continue to manufacture the Product Line with organic fluorine but promote the Product Line as a safe feeding option for infants that prioritizes the health and safety of infants and children and not disclose to Plaintiff and the public of the existence of, and warn of the potential safety risks from, organic fluorine and PFAS in the Product Line, Plaintiff (and other consumers) will be unable to make informed decisions about whether to purchase the products in the Product Line and will be unable to evaluate the differences between the products in the Product Line and competitors' products. Plaintiff is further likely to be repeatedly misled by Defendants' conduct, unless and until Defendants are compelled to either: 1) stop manufacturing the Product Line as long as it contains organic fluorine; or 2) cease marketing, labeling, packaging, and advertising the products in the Product Line as a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact; or 3) disclose to Plaintiff and the public of the existence of, and warn of the

potential safety risks from, organic fluorine and PFAS in the products in the Product Line.

## V. CLASS ACTION ALLEGATIONS

64. Plaintiff brings this class action pursuant to Rules 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of the Class defined as follows:

> All persons who purchased one or more products from the Product Line in the State of California during the time period of four (4) years preceding the date of the filing of this class action through the present. (Referred to herein as "the Class" or "Class Members" or "Class Period")

Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

65. Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.

66. Adequacy: Plaintiff is an adequate representative of the Class because Plaintiff's interests are the same as the class in that Plaintiff and the Class Members were subjected to the same omissions and representations by Defendants as set forth herein; Plaintiff intends to prosecute this action vigorously and completely on behalf of himself and the Class Members; Plaintiff has retained competent counsel experienced in prosecuting class actions; and Plaintiff's interests do not conflict with the interests of the Members of the Class. Based thereon, the interests of the Class Members will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.

67. Commonality and Predominance of Common Issues: Defendants have acted on grounds common and applicable to the entire Class and therefore,

numerous questions of law and fact are common to Plaintiff and the Class Members that predominate over any question affecting only individual Class Members thereby making relief appropriate with respect to the Class as a whole. Common and predominate factual and legal issues include but are not limited to:

a. The products in the Product Line that were and are currently being manufactured, marketed, advertised and sold by Defendants over the proposed Class Period and those purchased by Plaintiff and those tested by Plaintiff as set forth herein each have the same respective composition of materials and design during the Class Period.

b. The products in the Product Line that were and are currently being manufactured, marketed, advertised and sold by Defendants over the proposed Class Period and those purchased by Plaintiff and those tested by Plaintiff as set forth herein were each manufactured in the same manner during the Class Period.

c. The products in the Product Line are labeled and packaged the same during the Class Period. Therefore, Plaintiff and the Class Members were exposed to the same labeling and packaging for the products in the Product Line.

d. Defendants' marketing and representations about the products in the Product Line and Enfamil brand to which Plaintiff and the Class were exposed were the same during the Class Period and therefore common to Plaintiff and the Class Members.

e. Defendants' omissions and non-disclosures as to the products in the Product Line to which Plaintiff and the Class Members were exposed were the same during the Cass Period and therefore common to Plaintiff and the Class Members.

f. Whether the existence of organic fluorine and PFAS in the products in the Product Line implicates potential health or safety concerns to Plaintiff and the Class Members.

g. Whether the omissions and non-disclosures by Defendants of the existence of organic fluorine and PFAS in the products in the Product Line were and are material to Plaintiff and the Class Members.

h. Whether the marketing and advertising by Defendants promoting the products in the Product Line as a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact was and is material to Plaintiff and the Class Members.

i. Whether the marketing and advertising by Defendants promoting the Product Line as a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact was and is false, deceptive and/or misleading in violation of California Business & Professions Code § 17200, et seq., California Business & Professions Code § 17500, et seq. and/or California Civil Code § 1750, et. seq.

j. Whether the omission and non-disclosures by Defendants of the existence of, and health risks from, organic fluorine and PFAS in the products in the Product Line violates California Business & Professions Code § 17200, et seq., California Business &

Professions Code § 17500, et seq. and/or California Civil Code § 1750, et. seq.

68. Accordingly, the determination of Defendants' liability under each of the causes of action presents legal issues that are common to Plaintiff and the class as a whole.

69. Typicality: Plaintiff's claims are co-extensive with those of the Class members as Plaintiff and the Class Member's injuries and claims arise from the same course of conduct by Defendants as alleged herein.

70. The Class is identifiable and ascertainable. Plaintiff has precisely defined the Class based on objective criteria whereby Class Members would be able to know whether they are a member of the prospective Class, specifically, all persons who purchased products from the Product Line in the State of California during the time period of four (4) years preceding the date of the filing of this class action through the present.

71. Notice can be provided to such purchasers using techniques and a form of notice customarily used in class actions, including direct notice by email to the Class Members and other California consumers from Defendants' and third-party retailers' records, internet publication, radio, newspapers, magazines and other social media platforms such as YouTube, Instagram, TikTok and Facebook.

72. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. The expense and burden of individual litigation would make it impracticable and impossible for proposed Class Members to afford to seek legal redress for the wrongs complained of herein and prosecute their claims individually. Therefore, absent a class or representative action, the Class Members will continue to suffer losses and Defendants will be allowed to

continue these violations of law and to retain the proceeds of their wrongdoing. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication. Finally, trial on a representative and class basis would be manageable. Liability may be determined by facts and law common to the Class Representative and the Class Members and monetary damages or restitution may be determined by proven and approved methods on a class wide basis.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, et seq. (Unlawful, Unfair, and Fraudulent Business Acts or Practices)

73. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

74. This cause of action is brought pursuant to Business and Professions Code §17200, et seq., on behalf of Plaintiff and the Class Members.

75. Defendants are "person(s)" as defined by California Business & Professions Code § 17201.

76. The omissions and non-disclosures of the existence and health risks of organic fluorine and PFAS in the products in the Product Line and the false, misleading and deceptive marketing and advertising by Defendants detailed herein constitute unlawful, unfair, and fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising within the meaning of California Business & Professions Code § 17200, et seq.

77. Defendants' business practices, described herein, violated the "unlawful" prong of California Business & Professions Code § 17200, et seq. by violating California Civil Code §§ 3294, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

78. Defendants, in their marketing and advertising of the products in the Product Line and Enfamil brand, make material omissions and false and misleading statements regarding the attributes and qualities of the products in the Product Line and the Enfamil brand, as set forth herein.

79. Defendants knew that the omissions and representations that they made and continue to make about the products in the Product Line and the Enfamil brand are false, deceptive, and misleading to Plaintiff and Class Members.

80. Defendants' omissions and false, deceptive, and misleading representations were material to Plaintiff and the Class Members and played a substantial part, and were a substantial factor, in influencing Plaintiff's and the Class Members' decisions to purchase products from the Product Line.

81. Plaintiff and the Class Members relied on Defendants' omissions and false, deceptive, and misleading representations and would not have purchased the Products from the Product Line if not for the omissions and false, deceptive, and misleading representations and marketing by Defendants about the products in the Product Line and the Enfamil brand set forth herein.

82. Plaintiff and the Class Members have suffered injury in fact and have lost money or property as a result of Defendants' false, deceptive, and misleading representations and marketing set forth herein.

83. The Products as purchased by the Plaintiff and the Class Members were and are unsatisfactory and worth less than the amount paid for them.

84. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

85. All of Defendants' conduct alleged herein occurs and continues to occur in Defendants' business.

86. Wherefore, Plaintiff, the Class Members, and other California consumers have, among other things, no adequate remedy at law for the injuries that are currently being suffered and that will be suffered in the future in that, unless and until enjoined by order of this court, the omissions and non-disclosure of material information by Defendants that implicates health and safety concerns that a reasonable consumer would find material (i.e. the non-disclosure of the existence and health risks of organic fluorine and PFAS in the products in the Product Line) and the continued false, misleading and deceptive marketing and advertising by Defendants promoting the products in the Product Line as a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact will continue and cause great and irreparable injury to Plaintiff, Class Members and other California consumers.

87. Therefore, pursuant to Business & Professions Code § 17203, Plaintiff seeks an order in equity from this Court enjoining Defendants from continuing to engage, use, or employ the practice of falsely marketing and advertising for sale of the products in the Product Line as follows:

a. An order compelling Defendants to either stop manufacturing the Product Line with organic fluorine and PFAS; or

b. An order compelling Defendants to cease marketing, labeling, packaging, and advertising the products in the Product Line as a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact or

c. An order compelling Defendants to disclose to Plaintiff and the public of the existence of, and warn of the potential safety risks from, organic fluorine and PFAS in the products in the Product Line.

88. In addition, Plaintiff seeks an order awarding Plaintiff and the Class Members restitution of the monetary amounts by which Plaintiff and the Class Members did not receive the value of the products in the Product Line they paid for, and by which Defendants were unjustly enriched.

## SECOND CAUSE OF ACTION

## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500, et seq. (False and Misleading Advertising)

89. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein.

90. This cause of action is brought pursuant to California Business and Professions Code § 17500, et seq., on behalf of Plaintiff and the Class.

91. As alleged in the preceding paragraphs, the omissions and non-disclosures of the existence of, and health risks from, organic fluorine and PFAS in the products in the Product Line and the false, misleading and deceptive marketing and advertising by Defendants promoting the products in the Product Line as a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact detailed herein constitute unfair, unlawful, and fraudulent business practices within the meaning of California Business & Professions Code § 17500, et seq.

92. Defendants intended the omissions and non-disclosures of the existence of, and health risks from, organic fluorine and PFAS in the products in the Product Line and the marketing and advertising by Defendants promoting the

Product Line as a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact detailed herein.

93. Defendants publicly disseminated advertising which contained unlawful omissions and non-disclosures of material facts (i.e. the existence of, and health risks from, organic fluorine and PFAS in the products in the Product Line) and publicly disseminated advertising promoting the products in the Product Line as a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact which Defendants knew, or should have known in the exercise of reasonable care, was untrue or misleading via advertising mediums that include but are not limited to, https://www.enfamil.com/why-enfamil/quality-assurance/, as set forth herein.

94. Defendants' omissions and false, deceptive, and misleading representations were material to Plaintiff and the Class Members and played a substantial part, and were a substantial factor, in influencing Plaintiff's and the Class Members' decisions to purchase products from the Product Line.

95. Plaintiff and the Class Members relied on Defendants' omissions and false, deceptive, and misleading representations and would not have purchased products from the Product Line if not for the omissions and false, deceptive, and misleading representations and marketing by Defendants set forth herein.

96. Plaintiff and the Class Members have suffered injury in fact and have lost money or property as a result of Defendants' false, deceptive, and misleading representations and marketing set forth herein.

97. The Products as purchased by the Plaintiff and the Class Members were and are unsatisfactory and worth less than the amount paid for them.

98. All of Defendants' conduct alleged herein occurs and continues to occur in Defendants' business.

99. Wherefore, Plaintiff, the Class Members, and other California consumers have, among other things, no adequate remedy at law for the injuries that are currently being suffered and that will be suffered in the future in that, unless and until enjoined by order of this court, the omissions and non-disclosure of material information by Defendants that implicates health and safety concerns that a reasonable consumer would find material ( i.e. the non-disclosure of the existence of, and health risks from, organic fluorine and PFAS in products in the Product Line) and the continued false, misleading and deceptive marketing and advertising by Defendants promoting the products in the Product Line as a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact will continue and cause great and irreparable injury to Plaintiff, Class Members and other California consumers.

100. Therefore, pursuant to Business & Professions Code §17535, Plaintiff seeks an order in equity from this Court enjoining Defendants from continuing to engage, use, or employ the practice of falsely marketing and advertising for sale the products in the Product Line as follows:

a. An order compelling Defendants to either stop manufacturing the Product Line with organic fluorine and PFAS; or

b. An order compelling Defendants to cease marketing, labeling, packaging, and advertising the products in the Product Line as a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact; or

c. An order compelling Defendants to disclose to Plaintiff and the public of the existence of, and warn of the potential safety risks from, organic fluorine and PFAS in the products in the Product Line.

101. In addition, Plaintiff seeks an order awarding Plaintiff and the Class Members restitution of the monetary amounts by which Plaintiff and the Class Members did not receive the value of the products in the Product Line they paid for and by which Defendants were unjustly enriched.

**THIRD CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA CIVIL CODE § 1750, et seq.**

**(Consumer Legal Remedies Act)**

102. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein.

103. This cause of action is brought pursuant to California Civil Code § 1750, et seq., the Consumers Legal Remedies Act, on behalf of Plaintiff and a Class pursuant to California Civil Code § 1781 consisting of the Class defined above.

104. The Class consists of thousands of persons, the joinder of whom is impracticable.

105. There are questions of law and fact common to the Class, which questions are substantially similar and predominate over questions affecting the individual members, including but not limited to:

a. The products in the Product Line that were and are currently being manufactured, marketed, advertised and sold by Defendants during the proposed Class Period and those purchased by Plaintiff and those tested by Plaintiff as set forth herein each have the same respective composition of materials and design.

b. The products in the Product Line that were and are currently being manufactured, marketed, advertised and sold by Defendants during the proposed Class Period and those purchased by Plaintiff and those tested by Plaintiff as set forth herein were manufactured in the same manner.

c. The products in the Product Line are labeled and packaged the same during the proposed Class Period. Therefore, Plaintiff and the Class Members were exposed to the same labeling and packaging for the products in the Product Line.

d. Defendants' marketing and representations about the products in the Product Line and Enfamil brand to which Plaintiff and the Class were exposed were the same during the proposed Class Period and therefore common to Plaintiff and the Class Members.

e. Defendants' omissions and non-disclosures as to the products in the Product Line to which Plaintiff and the Class Members were exposed were the same during the proposed Class Period and therefore common to Plaintiff and the Class Members.

f. Whether the existence of organic fluorine and PFAS in the products in the Product Line implicates potential health or safety concerns to Plaintiff and the Class Members.

g. Whether the omissions and non-disclosures by Defendants of the existence of organic fluorine and PFAS in the products in the Product Line were and are material to Plaintiff and the Class Members.

h. Whether the marketing and advertising by Defendants promoting the products in the Product Line as a safe feeding option for infants that prioritizes the health and safety of infants and children,

undergoes extensive quality and safety checks, and is committed to reducing its environmental impact was and is material to Plaintiff and the Class Members.

i. Whether the marketing and advertising by Defendants promoting the Product Line as a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact was and is false, deceptive and/or misleading in violation of California Civil Code § 1750, et. seq.

j. Whether the omission and non-disclosures by Defendants of the existence of, and health risks from, organic fluorine and PFAS in the products in the Product Line violates California Civil Code § 1750, et. seq.

106. As set forth in detail herein, Defendants publicly disseminated marketing and advertising which contained unlawful omissions and non-disclosures of material facts (i.e. the existence of, and health risks from, organic fluorine and PFAS in the products in the Product Line) and publicly disseminated marketing and advertising promoting the products in the Product Line as a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact when in fact they are not.

///

///

///

///

///

107. The policies, acts, and practices described herein were intended to result in the sale of the products in the Product Line to the consuming public and violated and continue to violate California Civil Code § 1770(a)(5) of the Act by making omissions and representations that the products in the products in the Product Line have characteristics, ingredients and benefits which they do not have as represented, and violate California Civil Code § 1770(a)(7) by representing that the products in the Product Line are of a particular standard, quality, grade and style when they are of another.

108. In doing so, Defendants intentionally misrepresented material facts.

109. Defendants' omissions and representations about the products in the Product Line led Plaintiff and other consumers to believe that the products in the Product Line have characteristics, ingredients and benefits which they do not have and are of a particular standard, quality, grade and style when they are of another.

110. Defendants knew that the omissions and the representations concerning the products in the Product Line's purported attributes and qualities were false and/or misleading and material to the Plaintiff, the Class Members and other consumers' purchase decisions.

111. Defendants' actions as described hereinabove were done with a conscious disregard of Plaintiff's, the Class Members' and other consumers' rights.

112. Defendants' omissions and false, deceptive, and misleading representations were material to Plaintiff and the Class Members and played a substantial part, and were a substantial factor, in influencing Plaintiff's and the Class Members' decisions to purchase products from the Product Line.

113. Plaintiff and the Class Members relied on Defendants' omissions and false, deceptive, and misleading representations and would not have purchased the products from the Product Line if not for the omissions and false, deceptive, and misleading representations and marketing by Defendants set forth herein.

114. Plaintiff and the Class Members have suffered injury in fact and have lost money or property as a result of Defendants' false, deceptive, and misleading representations and marketing set forth herein.

115. The Products as purchased by the Plaintiff and the Class Members were and are unsatisfactory and worth less than the amount paid for them.

116. Defendants were served by Plaintiff with written notices pursuant to Civil Code § 1750, et seq., (Defendant RECKITT BENCKISER, LLC on February 17, 2024, Defendant MEAD JOHNSON & COMPANY, LLC on February 20, 2024) which set forth Plaintiff's contentions and requested remedy. Plaintiff's letter was sent via certified mail with electronic return receipt to Defendants who acknowledged receipt. Defendants rejected Plaintiff's attempts to address the concerns stated herein and instead has allowed the products in the Product Line to continue to be sold with full knowledge of the alleged claims.

117. All of Defendants' conduct alleged herein occurs and continues to occur in Defendants' business.

118. Wherefore, Plaintiff and other California consumers have, among other things, no adequate remedy at law for the injuries that are currently being suffered and that will be suffered in the future in that, unless and until enjoined by order of this court, the omissions and non-disclosure of material information by Defendants that implicates health and safety concerns that a reasonable consumer would find material (i.e. the existence of, and health risks from, of organic fluorine and PFAS in the products in the Product Line) and the continued false, misleading and deceptive marketing and advertising by Defendants promoting the products in the Product Line as a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact, will continue and cause great and irreparable injury to Plaintiff, Class Members and other California consumers.

119. Therefore, pursuant to California Civil Code § 1780(a)(2), Plaintiff seeks an order in equity from this Court enjoining Defendants from continuing to engage, use, or employ the practice of falsely marketing and advertising for sale the Products as follows:

a. An order compelling Defendants to either stop manufacturing the Product Line with organic fluorine and PFAS; or

b. An order compelling Defendants to cease marketing, labeling, packaging, and advertising the products in the Product Line as a safe feeding option for infants that prioritizes the health and safety of infants and children, undergoes extensive quality and safety checks, and is committed to reducing its environmental impact; or

c. An order compelling Defendants to disclose to Plaintiff and the public the existence of, and warn of the potential safety risks from, organic fluorine and PFAS in the products in the Product Line.

120. In addition, Plaintiff seeks an order awarding Plaintiff and the Class Members restitution of the monetary amounts by which Plaintiff and the Class Members did not receive the value of the products in the Product Line they paid for and by which Defendants were unjustly enriched.

///

///

///

///

///

///

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all Causes of Action as follows:

**FIRST AND SECOND CAUSES OF ACTION**

1. An order enjoining Defendants from the practices complained of herein;
2. An order certifying that this action may be maintained as a Class Action;
3. For an award of restitution in an amount according to proof at trial;
4. For an award of attorney fees pursuant to California Civil Code § 1021.5.

**THIRD CAUSE OF ACTION**

1. An order enjoining Defendants from pursuing the practices complained of pursuant to California Civil Code § 1780(a)(2);
2. An order certifying that the action may be maintained as a Class Action pursuant to California Civil Code § 1781;
3. For an award of restitution in an amount according to proof at trial pursuant to California Civil Code § 1780(a)(3);
4. For an award of punitive damages pursuant to California Civil Code § 1780(a)(4);
5. For an award of costs of this suit pursuant to California Civil Code § 1780(e);
6. For an award of attorney fees pursuant to California Civil Code § 1780(e) and/or California Civil Code § 1021.5.

**FURTHER RELIEF**

Plaintiff further seeks actual and punitive damages pursuant to California Civil Code § 3294, pre- and post-judgment interest and such other and further relief as the Court may deem necessary or appropriate.

## VII. JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all triable issues.

DATED: May 14, 2024

**STEVENS, L.C.**

**By:** ______________________

Paul D. Stevens
Attorneys for Plaintiff